UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ELISA P., <br><br> Plaintiff, <br><br> v. <br><br> ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 3:20-cv-6185-DWC <br><br> ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 5. This matter is fully briefed. *See* Dkts. 16, 21, 23.

Plaintiff has a diagnosis of posttraumatic stress disorder following sexual assaults and a domestic violence relationship. She alleges psychological limitations supported by opinions from doctors specializing in psychology. However, the ALJ failed to credit fully the medical opinions from psychological experts based on the ALJ's apparent reinterpretation of the mental status examination performed by the psychological doctors. Because the ALJ found a discrepancy within the mental status examination of the psychological expert where no discrepancy appears to exist, the ALJ's rejection of the doctor's opinion is not based on substantial evidence in the record. Because the ALJ otherwise did not provide substantial evidence to reject the medical

ORDER - 1

opinion of Dr. Morgan, and because this error is not harmless, this matter must be reversed and remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On July 23, 2018, plaintiff filed an application for SSI, alleging disability as amended, as of July 23, 2018. *See* Dkt. 11, Administrative Record ("AR"), p. 15 . The application was denied on initial administrative review and on reconsideration. *See* AR . A hearing was held before Administrative Law Judge Elizabeth Watson ("the ALJ") on May 21, 2020. *See* AR 30-53. In a decision dated June 08, 2020, the ALJ determined plaintiff to be not disabled. *See* AR 12-29. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* AR 1-6; 20 C.F.R. § 404.981, § 416.1481.

In plaintiff's Opening Brief, plaintiff maintains the ALJ erred by: (1) failing to evaluate properly the medical evidence; (2) failing to properly evaluate plaintiff's testimony; and (3) failing to properly evaluate the lay evidence, among other reasons. "Open," Dkt. 16, p. 1. Defendant contends the ALJ reasonably evaluated the evidence. "Response," Dkt. 21, p. 1.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

ORDER - 2

DISCUSSION

**I.      The ALJ erred when evaluating the medical evidence.**

Plaintiff contends the ALJ erred when evaluating the medical evidence, such as the medical opinion evidence provided by Drs. Morgan and Adler. Open, Dkt. 16, pp. 1, 2-6. Defendant contends the ALJ reasonably evaluated the medical opinion evidence. Response, Dkt. 21, pp. 20-24.

In 2017, the Commissioner issued new regulations governing how ALJs are to evaluate medical opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). That explanation must be legitimate, as the Court will not affirm a decision that is based on legal error or not supported by substantial evidence. *See Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Thus, the regulations require the ALJ to provide specific and legitimate reasons to reject a doctor's opinions. *See also Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012 at *3 (W.D. Wash. Nov. 10, 2020) (unpublished opinion) (finding that the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to how an *ALJ* should weigh or evaluate opinions, but rather the standard by which the *Court* evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence).

As plaintiff filed the claim on July 23, 2018, the ALJ applied the new regulations. *See* AR 15, 23. Therefore, based on the above considerations, the Court will determine whether the ALJ's decision is free of legal error and supported by substantial evidence.

On September 19, 2018, Dr. David T. Morgan, PhD, diagnosed plaintiff with posttraumatic stress disorder ("PTSD") and noted clinical findings of anxiety of marked severity with daily frequency. *See* AR 233. Dr. Morgan performed a mental status examination, observing plaintiff's anxious mood and tearful affect, for example. *See* AR 235. Dr. Morgan also noted during plaintiff's history that she "has a long history of trauma having been in a significant domestic violence relationship," as well as being the victim of sexual assault. *See* AR 232. She described typical PTSD symptoms of hypervigilance, flashbacks about her history of abuse, and her feelings of being overwhelmed, "like she is going through the abuse all over again." *See id*. She described spending most of her time at home "because she is afraid to be in the community." AR 233.

Dr. Morgan provided specific medical opinions regarding plaintiff's ability to perform work activities. *See* AR 233-34. For example, Dr. Morgan opined plaintiff was severely limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; and was markedly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; communicate and perform effectively in a work setting; and maintain appropriate behavior in a work setting, as well as other marked limitations. *See id*.

The ALJ found Dr. Morgan's opinions to be "not persuasive." AR 23. The ALJ found Dr. Morgan's opinions "are not supported with or consistent with his own mental status examination findings, which he reported his being all within normal limits other than anxious mood and

tearful affect." AR 23. The ALJ found Dr. Morgan's opinion of normal functioning with respect to thought process and content, orientation, perception, memory, fund of knowledge, concentration, abstract thought and insight and judgment directly contradicted the findings of marked limitations. AR 23-24. However, for the reasons discussed below, the Court concludes that this finding by the ALJ of a lack of support or inconsistency with the mental status examination is not based on substantial evidence. As reflected in the record, Dr. Morgan opined plaintiff's mental and logical functioning were within normal limits, but her emotional and affective processing were not entirely within normal limits: the ALJ's finding of a discrepancy appears to reflect a misunderstanding of human psychology and the mental status examination.

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences,

ORDER - 5

intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

When an ALJ seeks to discredit a medical opinion, she must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (quoting *Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

The ALJ relied on her own finding of a discrepancy between Dr. Morgan's findings of plaintiff's normal logical functioning and Dr. Morgan's findings of plaintiff's affective and emotional limitations. The ALJ did not explain why normal logical functioning cannot coexist with psychological limitations. Because the ALJ provided a lay interpretation of the mental status examination, finding a discrepancy where the psychological doctors trained in psychology

1  did not, the Court concludes the ALJ's finding of a discrepancy is not based on substantial
2  evidence.
3       The ALJ also found Dr. Morgan's opinions to be "not supported by the medical evidence
4  of record as a whole that reveals [plaintiff] has been able to seek out assistance as needed and is
5  overall independent with her activities of daily living." AR 23. However, having the ability to
6  seek out assistance as needed is not inconsistent with Dr. Morgan's opinions that plaintiff's
7  mood and affect symptoms caused marked limitations, such as marked imitation in her ability to
8  perform activities within a schedule, maintain regular attendance, and be punctual within
9  customary tolerances without special supervision; communicate and perform effectively in a
10 work setting; and, maintain appropriate behavior in a work setting. *See* AR 233-34. The ALJ did
11 not explain why plaintiff's ability to seek out assistance as needed is inconsistent with, for
12 example, the opinion that she has marked limitation in performing activities within a schedule, as
13 her ability to seek out assistance as needed has not been demonstrated to be performed within a
14 schedule. Similarly, the ALJ has not explained how being independent in her activities of daily
15 living demonstrates plaintiff can perform activities within a schedule, maintain regular
16 attendance or perform effectively in a work setting. Being independent in activities of daily
17 living does not generally require performing activities within a schedule or performing
18 effectively in a work setting, as activities of daily living generally are performed at home or on
19 one's own schedule. For the reasons stated and based on the record as a whole, the Court
20 concludes that the ALJ's finding that Dr. Morgan's opinions are inconsistent with plaintiff's
21 ability to seek out assistance as needed and be independent and activities of daily living is not a
22 finding based on substantial evidence. For the reasons stated below, the Court concludes also that
23 this error is not harmless.
24
25

ORDER - 7

**II.     Harmless error**

The Ninth Circuit has "long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An error is harmless if it is "'inconsequential to the ultimate non[-]disability determination.'" *Molina*, *supra,* 674 F.3d at 1117 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

The ALJ erred when failing to credit fully the medical opinions from Dr. Morgan, *see supra*, Section I. Among other opinions, Dr. Morgan opined plaintiff was severely limited in her ability to adapt to changes in a routine work setting as well as in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; and was markedly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; communicate and perform effectively in a work setting; and maintain appropriate behavior in a work setting, as well as other marked limitations. *See* AR 233-34. At plaintiff's administrative hearing, the vocational expert testified as follows:

> [J]ust vocationally and interacting with supervisors, employees and employers, discussing these issues with their employees, I'm under the assumption your referencing being off task, and if an individual had issues with that, specifically within unskilled work, 10% appears to be the cut off label -- or time.
> If an individual is having issues and difficulties in staying on task, that of course would affect their ability to complete the tasks that they were hired for.

AR 50-51.

Based on the record, the Court concludes that the ALJ's failure to provide substantial evidence in support of the rejection of the medical opinions from Dr. Morgan is not harmless error. *See Molina*, *supra,* 674 F.3d at 1117 (quoting *Carmickle*, *supra*, 533 F.3d at 1162). The

ORDER - 8

error is not "'inconsequential to the ultimate non[-]disability determination.'" *Id*. Therefore, this matter must be reversed and remanded for further administrative proceedings including reevaluation of the medical opinions from Dr. Morgan. *See id*.

The ALJ provided a similar assessment of the medical opinions provided by Dr. Adler. *See* AR 24. Based on the record as a whole, the Court concludes the ALJ should reevaluate the medical opinions from Dr. Adler following remand of this matter as well.

**III.    Regarding the ALJ's evaluation of plaintiff's claims and the lay evidence.**

Plaintiff contends that the ALJ erred by failing to provide sufficient reasons for not incorporating fully plaintiff's subjective claims; however, the Court already has concluded that the ALJ committed harmful error and the medical evidence should be reviewed anew, *see supra*, Sections I and II. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter. Similarly, the lay evidence should be assessed anew.

CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 9th day of December, 2021.

David W. Christel
United States Magistrate Judge

ORDER - 9